RAY KIM LAW, APC
Raymond Y. Kim (SBN 251210)
112 E. Amerige Ave., Suite 240
Fullerton, CA 92832
Telephone:    833-729-5529
Facsimile:    833-972-9546
E-mail: ray@raykimlaw.com

THE KIM LAW FIRM, LLC
Richard H. Kim
(*Pro hac vice* to be filed)
1515 Market St., Suite 1200
Philadelphia, PA 19102

Attorneys for Plaintiff
Kyle L. Dandy

# UNITED STATES DISTRTICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kyle L. Dandy,<br><br>        Plaintiff,<br><br>  vs.<br><br>Checkr, Inc.<br><br>        Defendant. | CASE NO.: _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Kyle L. Dandy brings this Complaint against Defendant Checkr, Inc. ("Defendant" or "Checkr") for violations of the federal Fair Credit Reporting Act ("FCRA"), §§ 1681 *et seq.* and the Consumer Credit Reporting Agencies Act, Civil Code §§ 1786, *et seq*. and alleges as follows:

## INTRODUCTION

1. Defendant is a consumer reporting agency (pursuant to the FCRA) and an investigative consumer reporting agency (pursuant to the ICRAA), that compiles and maintains files on consumers on a nationwide basis. Defendant sells consumer reports and investigative consumer reports (collectively "background check reports") generated from its database and furnishes these reports, which are used to make decisions regarding whether to offer job opportunities, to consumers.

**COMPLAINT**

2. Defendant improperly published adverse information that should have been excluded from Plaintiff's background check reports. Defendant's reporting is grossly inaccurate and untrue.

3. Plaintiff's background check reports were ordered from Defendant to qualify Plaintiff for various job opportunities. Plaintiff's job applications, however, were denied after Defendant's reports about Plaintiff were received because they included criminal information involving Plaintiff that should have been excluded from his reports.

4. Despite Plaintiff's disputes, Defendant continued to report the sealed and outdated criminal record, which ultimately resulted in the loss of job opportunities for Plaintiff.

5. Defendant's unauthorized reporting of stale and unauthorized criminal information could have easily been avoided at the outset - and certainly following Plaintiff's disputes (approximately 6) - had Defendant, among other things, performed a cursory review of the underlying public court records from the Eighth Judicial District Court, Clark County, Nevada. This cursory review would have confirmed that the criminal record was sealed and could not be verified to be accurate.

6. Moreover, had Defendant simply reviewed the information already in its possession, it would have been evident that the criminal information reported had antedated the furnished background check reports by more than seven (7) years.

7. Defendant does not employ strict or reasonable procedures to assure the maximum possible accuracy of information it reports regarding consumers, and certainly fails to insure reporting the current status of criminal record information, such as Plaintiff's. Defendant's failure to employ strict or reasonable procedures resulted in Plaintiff's report being grossly inaccurate and Plaintiff losing two job opportunities.

8. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking job opportunities by prejudicing prospective employers with inaccurate criminal record information.

9. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of job opportunities, wages, bonuses, and benefits; loss of economic opportunities and positions in the future; loss of time and money trying to correct

Ray Kim Law, APC
112 E. Amerige Ave., Suite 240
Fullerton, CA 92832

his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, embarrassment and depression for which Plaintiff is contemplating seeking help from a mental health professional.

10. Accordingly, Plaintiff brings claims against Defendant for, among other things, violating Sections 1681e(b) and 1681i(a) of the FCRA as well as Sections 1786.20(b), 1786.24(a), 1786.24(e), 1786.28(b), 1786.18(a)(7) and 1786.18(c) of the ICRAA.

### THE PARTIES

11. Plaintiff is an individual consumer who has made applications to a person for employment purposes, residing in Las Vegas, Nevada.

12. Defendant Checkr is a background checking company with its principal place of business in San Francisco, CA. Checkr regularly does business in California and is the reporter of the inaccurately reported information at issue. Management level employees of Checkr are also based in San Francisco, CA. Moreover, upon information and belief, Defendant's information technology operations used for consumer reporting information; information used to investigate allegations of inaccurate consumer information; servers; and personnel related to consumer reporting; and policies and procedures at issue, were developed, designed, and implemented in California.

13. Defendant, among other things, sells background check reports to employers for their use in determining whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports include, among other things, information relating to a consumer's character, general reputation, and personal characteristics. Thus, these reports are considered consumer reports pursuant to Section 1681a(d)(1) of the FCRA as well as investigative consumer reports pursuant to Section 1786.2(c) of the ICRAA and are provided in connection with a business transaction initiated by the employer.

14. Defendant is a consumer reporting agency as defined in Section 1681a(f) of the FCRA as well as an investigative consumer reporting agency as defined by Section 1786.2(d) of the ICRAA because for monetary fees, it regularly engages in the practice of evaluating and/or assembling

**COMPLAINT**

information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

15. Jurisdiction of this Court arises under 15 U.S.C. § 1681p, and 28 U.S.C. §1331, 1337.

16. Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

## FACTS

### Defendant's Business Practices

17. There has been increased collection and aggregation of consumer data, including criminal records. As a result of the increasing availability of this data, there has been a boom in the background check industry.

18. As summarized in a recent report[1] by the Consumer Financial Protection Bureau ("CFPB"), a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. (CFPB Report at 4.)

19. The criminal background check industry takes in revenues of $3 billion a year and is growing.[2]

20. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed when creating criminal background checks.

21. Background check companies collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-backgroundscreening_report.pdf ("CFPB Report").

[2] IBISWorld, Inc., Background Check Services in the US: Report Snapshot, available at http://www.ibisworld.com/industry/background-check-services.html.

often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

22. Defendant is well aware of the FCRA and the ICRAA and has presumably been sued several times for reporting inaccurate information.

23. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

24. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

25. As the Brookings Institute explained in the context of credit reporting (which uses the same industry approach in preparing its reports), "[w]ith money on the line, you might assume that the credit reporting system would fix the problem. In reality it is the opposite. Speed and volume are favored over accuracy. Large-scale inaccuracies are tolerated. The costs of correcting the data outweigh benefits — for the credit bureaus, though, not the consumers… Given the importance of credit scores, why are they so inaccurate? Three reasons: size, speed, and economic incentives of the system."[3]

26. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for reports that are accurate.

27. Appropriate quality control review of Plaintiff's background check report would have made clear that Defendant was reporting a sealed criminal record that is not contained in the public record.

### The FCRA's Statutory Background

28. Even before present day issues, Congress had concerns relating to the consumer reporting industry and its far-reaching impact on consumers.

---

[3] The Real Problem with Credit Reports is the Astounding Number of Errors, https://www.brookings.edu/articles/the-real-problem-with-credit-reports-is-the-astounding-number-of-errors/.

29. In response, in 1970, the Congress passed the FCRA. The enactment of the FCRA was driven in part by two related concerns: first, that consumer reports were playing a pivotal role in people's lives at critical moments, such as when they applied for job opportunities or for credit. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

30. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C.§ 1681.

31. In order to address some of these concerns, Congress specifically required consumer reporting agencies to follow "reasonable procedures to ensure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

32. To further its aim at assuring accurate consumer reports, Congress additionally required consumer reporting agencies to engage in reasonable investigations of any information disputed by a consumer. 15 U.S.C. § 1681i(a).

33. However, despite the FCRA's directives, consumer reports have continued to include inaccuracies resulting from consumer reporting agencies' failure to adhere to Sections 1681e(b) and 1681i(a) of the FCRA.

**The FCRA's Protections for Job Applicants**

34. The FCRA covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name which were used to deny him two job opportunities.

35. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

36. As stated by the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

37. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

38. Under Section 1681e(b) of the FCRA, consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

39. Further, under Section 1681i(a) of the FCRA, consumer reporting agencies are required to conduct a reasonable investigation to determine whether any disputed information is accurate.

40. After any investigation, if "any information disputed by a consumer…is found to be inaccurate or incomplete *or cannot be verified*, the consumer reporting agency shall – promptly delete that item of information…or modify that item of information, as appropriate, based on the results of the reinvestigation." 15 U.S.C. §§ 1681i(a)(5)(A) and 1681i(a)(5)(A)(i) (emphasis added).

41. Here, the sealed criminal record should not have been reported in the first instance, and certainly should not have continued to be reported following Plaintiff's disputes of Defendant's inaccurate reporting because, among other reasons, they were sealed and not publicly available and could not be verified to be accurate.

## THE ICRAA'S STATUTORY BACKGROUND

42. Understanding the dire consequences and adverse effect that inaccurately reported information can have on consumers, California passed the ICRAA. The ICRAA regulates information reported by consumer reporting agencies that report "information on a consumer's character, general reputation, personal characteristics…". These types of consumer reporting agencies, like Defendant, are known as investigative consumer reporting agencies under the ICRAA.

43. The ICRAA provides similar protections as the FCRA, such as requiring reasonable procedures to assure maximum possible of accuracy concerning the reports it issues (Cal. Civ. Code § 1786.20(b)), but goes further, and places additional restrictions on the operations of consumer reporting agencies, such as Defendant.

44. For instance, the ICRAA:

(i) requires that, if the completeness or accuracy of any item of information is disputed by a consumer, the investigative consumer reporting agency shall conduct an investigation and "record the *current status* of the disputed information *or delete the item from the file…*" Cal. Civ. Code § 1786.24(a) (emphasis added)

(ii) requires that, after an investigation, "the disputed item of information is found to be inaccurate, incomplete, or *cannot be verified by the evidence submitted,* the investigative consumer reporting agency shall promptly delete that information from the consumer's file or modify the information, as appropriate, based on the results of the reinvestigation, and shall notify the consumer that the information has been deleted or modified." Cal. Civ. Code § 1786.24(e) (emphasis added)

(iii) requires "[a] consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles, collects, assembles, evaluates, reports, transmits, transfers, or communicates items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall in addition *maintain strict procedures* designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it *is complete and up to date*." Cal. Civ. Code § 1786.28 Cal. Civ. Code § 1786.28(b) (emphasis added)

(iv) prohibits investigative consumer reporting agencies from including any "Records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, release, or parole, *antedate the report by more than seven years*." Cal. Civ. Code § 1786.18(a)(7)

(v) prohibits an investigative consumer reporting agency from "furnishing an investigative consumer report that includes information that is a matter of public record and that relates to an arrest, indictment, conviction, civil judicial action, tax lien, or outstanding judgment, unless the agency has verified the accuracy of the information during the 30-day period ending on the date on which the report is furnished." Cal. Civ. Code § 1786.18(c)

45. As discussed further herein, Defendant violated each of these provisions of the ICRAA.

**Plaintiff's Denial of Job Opportunities**

46. In July 2024, Plaintiff applied for job opportunities with BallerTV and Spark Driver.

47. The job opportunities with BallerTV and Spark Driver required background checks.

48. BallerTV and Spark Driver obtained background check reports from Defendant to evaluate Plaintiff's suitability for the opportunities, which included a sealed and outdated criminal record.

49. Plaintiff disputed the criminal background checks with Defendant approximately six (6) different times.

50. Plaintiff's disputes included documentation relating to the sealing of the criminal record, personal identifying information, as well as an explanation that the record that was being reported by Defendant was sealed and should not be reported.

51. This information should have been sufficient to result in a reasonable investigation to be conducted by Defendant. If the evidence submitted by Plaintiff was not sufficient to verify that the criminal record was inaccurately reported, Defendant should have deleted the criminal record from Plaintiff's background check report, which it did not.

52. At minimum, the investigation should have revealed that Defendant could not report the complete or current status of the criminal record, as it had been sealed at the time of Plaintiff's disputes, and therefore, should have been deleted by Defendant.

53. Further, the criminal matter that was included within Plaintiff's background check report had a disposition date that antedated the reports that were provided to BallerTV and Spark Driver by more than seven (7) years, which should have resulted in the exclusion of the criminal information from Plaintiff's reports.

54. A cursory review of Defendant's own records, or the widely available underlying public court records, confirms that the criminal matter that was included within his background check reports does not exist. As such, Defendant could not have maintained strict procedures to confirm that it was reporting complete and up to date criminal information relating to Plaintiff.

55. Moreover, because the criminal information was sealed, Defendant could not have verified the accuracy of the sealed criminal record thirty (30) days prior to publishing it within Plaintiff's background check reports.

56. Nevertheless, it was not until approximately Plaintiff's sixth (6) dispute that Defendant finally deleted the criminal record from Plaintiff's report. At that point, the job opportunities with BallerTV and Spark Driver were no longer available.

57. Plaintiff had been excited about the potential to join the workforce and was excited to earn a better living. Due to not being able to obtain the Spark Driver and BallerTV job opportunities, Plaintiff felt anxiety, was depressed, his self-esteem dropped, and he felt hopeless.

58. The reason the adverse information that otherwise should have been excluded was included in the background check reports was because Defendant failed to follow reasonable or strict procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employers.

59. Defendant also could not have engaged in a reasonable investigation of Plaintiff's disputes. A reasonable investigation would have involved, among other things, reviewing and verifying the accuracy of the publicly available information relating to the published criminal matter. A lack of review of public records for verification of the criminal information confirms that Defendant either did not engage in any investigation when it received Plaintiff's disputes, or (alternatively) did not engage in a reasonable investigation, as such an investigation would have revealed that the inaccurate information was being wrongfully reported.

60. Defendant knew or should have known that its actions violated the law. Additionally, Defendant could have taken the steps necessary to bring its agents' actions within compliance of the law but neglected to do so and failed to adequately review those actions to ensure compliance with the law.

61. Plaintiff's consumer reports and file containing the inaccurate information have been provided to and reviewed by third parties, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving employment offers and job opportunities, known and unknown.

62. As a result of Checkr's conduct, Plaintiff has suffered actual damages in the form of employment denial or loss of employment opportunity, informational harm, privacy harm, and emotional distress, including, but not limited to, anxiety, frustration, embarrassment, and humiliation.

63. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

**FIRST CAUSE OF ACTION**

**FCRA**

64. Plaintiff repeats, re-alleges, and incorporates by reference all other paragraphs, as if fully set forth herein.

65. At all pertinent times, Checkr was a "person" as that term is defined by 15 U.S.C. § 1681a(b).

66. At all pertinent times, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

67. At all pertinent times, the above-mentioned reports were a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

68. The Defendant has violated numerous provisions of the FCRA for its improper actions, including but not limited to Sections 1681e(b) and 1681i(a) of the FCRA. Defendant willfully and negligently violated the FCRA and is liable for damages to Plaintiff pursuant to Section 1681n and/or 1681o of the FCRA.

69. The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendant is liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

**SECOND CAUSE OF ACTION**

**ICRAA**

70. Plaintiff repeats, re-alleges, and incorporates by reference all other paragraphs, as if fully set forth herein.

71. At all pertinent times, Checkr was an "investigative consumer reporting agency" as that term is defined by 1786.2(c) of the ICRAA.

72. At all pertinent times, Plaintiff was a "consumer" as that term is defined by Section 1786.2(b) of the ICRAA.

**COMPLAINT**

73. At all pertinent times, the above-mentioned reports were an "investigative consumer report" as that term is defined by 1786.2(c) of the ICRAA.

74. The Defendant has violated numerous provisions of the ICRAA for its improper actions, including but not limited to Sections 1786.20(b), 1786.24(a), 1786.24(e), 1786.28(b), 1786.18(a)(7) and 1786.18(c) of the ICRAA. Defendant willfully and negligently violated the FCRA and is liable for damages to Plaintiff pursuant to Sections 1786.50(a) and/or 1786.50(b) of the FCRA.

75. The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendant is liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Checkr, and Plaintiff be awarded the following legal and equitable relief:

1. Actual damages;
2. Statutory damages;
3. Damages based on willful violations;
4. Reasonable attorney's fees and costs to bring and maintain the instant action.
5. For such other and further relief as the Court may deem just and proper.

**TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated:  September 20, 2024			THE KIM LAW FIRM, LLC

						/s/ Richard H. Kim
						Richard H. Kim
						(*Pro hac vice* to be filed)

						RAY KIM LAW, APC

						/s/ Raymond Y. Kim
						Raymond Y. Kim

						Attorneys for Plaintiff
						Kyle L. Dandy